UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
 ) **JUDGE RICHARD L. SPEER**
Jorge and Linda Duran )
 ) Case No. 11-35966
    Debtor(s) )
 )

## DECISION AND ORDER

This cause comes before the Court on the Motion of the Debtors, Jorge and Linda Duran, to Reopen their Chapter 13 Case. (Doc. No. 42). On January 26, 2012, a Hearing was held on the Debtors' Motion. The Chapter 13 Trustee appeared at the Hearing and objected to the relief sought by the Debtors. At the conclusion of the Hearing, after hearing the arguments raised by the Parties, the Court Denied the Debtors' Motion to Reopen their Chapter 13 case. As the basis for this decision, the following, pursuant to Bankruptcy Rules 7052 and 9014(c), constitutes this Court's findings of fact and conclusions of law.

### FACTS

On October 20, 2010, the Debtors, Jorge and Linda Duran, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Case No. 10-37152). In this case, the Debtors disclosed that they did not have any interest in real property and that they had personal property worth $20,442.46. For their liabilities, the Debtors disclosed $16,300.00 in secured debt; $25,081.46 in unsecured, priority debt; and $38,700.64 in unsecured, nonpriority debt.

The Debtors represented that their secured obligations were collateralized against these items of property: (1) a 2001 Harley Fat Boy Motorcycle; three televisions; certain leather couches; and a riding lawnmower. In their statement of intention, the Debtors disclosed that they intended to

In re: Jorge and Linda Duran
Case No. 11-35966

reaffirm on each of the debts secured against this collateral. On February 17, 2011, an order of discharge was entered in the Debtors' case.

Prior to the commencement of their Chapter 7 case, the Debtors had been, whether individually or jointly, debtors before this Court in the following seven bankruptcy cases:

(1) Case No. 95-32686: Chapter 7 filed on October 19, 1995. Discharge entered on July 29, 1996. (Individual case: Jorge Duran).

(2) Case No. 99-30958: Chapter 13 filed on March 16, 1999. This case was voluntarily dismissed on June 12, 2000. (Individual case: Jorge Duran).

(3) Case No. 01-30390: Chapter 13 filed on January 30, 2001. This case was voluntarily dismissed on July 3, 2001. (Joint Case).

(4) Case No. 02-31890: Chapter 7 filed on March 27, 2002. The Debtors received a discharge on July 25, 2002. (Joint Case).

(5) Case No. 04-34830: Chapter 13 filed on June 9, 2004. In his plan filed with the case, the Debtor proposed to pay 100% to his unsecured creditors. No plan was ever confirmed by the Court. This case was dismissed on a Motion filed by the Trustee on December 16, 2004. (Individual case: Jorge Duran).

(6) Case No. 05-31055: Chapter 13 filed on February 16, 2005. In his plan filed with the case, the Debtor proposed to pay 100% to his unsecured creditors. The Debtor's plan was confirmed. The case was dismissed on November 10, 2008, pursuant to an Affidavit submitted by the Trustee. (Individual case: Jorge Duran).

(7) Case No. 09-36966: Chapter 13 filed on October 7, 2009. In their plan filed with their case, the Debtors proposed to pay 5% to their unsecured creditors. No plan was ever confirmed by the Court. This case was dismissed on April 21, 2010, pursuant to an Agreed Order under 109(g) for 180 days. (Joint Case).

In re: Jorge and Linda Duran
Case No. 11-35966

On November 3, 2011, the Debtors filed the case now before the Court, seeking relief under Chapter 13 of the Bankruptcy Code. (Doc. No. 1). In this case, the Debtors disclosed that they had a combined net monthly income of $3,405.77 and average monthly expenses of $3,596.48, thereby leaving the Debtors a shortfall in their monthly budget of $190.71. The Debtors, however, reported that their monthly income will soon increase by $532.00 per month when Mrs. Duran begins to receive social security payments.

Contemporaneous with the filing of their Chapter 13 case, the Debtors filed their proposed chapter 13 plan. Among the terms of their plan, it was provided:

> Debtors propose a 36-month plan with Debtors to pay the trustee $1.00 per month for a period of 4 months, then $340.00 per month for 6 months, then $550.00 per month for 26 months, for the trustee to distribute under this plan.

(Doc. No. 3). Under this plan, unsecured creditors with allowed claims were to realize a return of 1% on their claims. As a part of their proposed plan, the Debtors set forth that they intended to surrender their 2001 Harley Davidson. Thereafter, the Debtors filed two amended plans.

In their second amended plan, the Debtors proposed a "48 month plan with Debtors to pay the trustee $880.00 per month for a period of 4 months, then $1,412.00 per month for 44 months . . . ." (Doc. No. 28). Under this amended plan, unsecured creditors with allowed claims were to realize a return of 35% on their claims. As with their initial plan, it was set forth that the 2001 Harley Davidson was to be surrendered.

In their present case, the Debtors disclosed that they had real property valued at $106,600.00, constituting their residence, and personal property worth $44,292.46. For their liabilities, the Debtors disclosed $151,222.00 in secured debt which included the following obligations: (1) an installment

Page 3

In re: Jorge and Linda Duran
Case No. 11-35966

loan of $23,590.00 for a 2011 Kia Soul; (2) an auto loan of $9,039.00 for a 2001 Kia Sportage;[1] (3) an obligation of $11,300.00 for the Debtors' 2001 Harley Davidson Fat Boy; and (4) $106,000.00 for a land contract secured against the Debtors' residence. The obligations regarding the two Kia vehicles and the land contract were incurred by the Debtors after the filing of their prior Chapter 7 case. The Debtors are now in arrears on their land contract.

For their unsecured liabilities, the Debtors disclosed $7,905.00 in priority, unsecured claims, and $19,817.64 in nonpriority, unsecured claims. The Debtors' unsecured, priority debt was comprised entirely of outstanding tax obligations. The composition of the Debtors' unsecured, nonpriority debt was a mixture of different liabilities, including obligations based upon cash advances, credit card balances, unpaid utilities, medical services, student loans and charges incurred for an "NSF" check to a grocery.

On November 14, 2011, the Chapter 13 Trustee filed a Motion to Dismiss this case. (Doc. No. 11). In this Motion, the Trustee set forth: "based upon the history of repeated filings by the Debtors, and the history of Chapter 13 cases where the Debtor made minimal or no payments, the Chapter 13 Trustee prays that [this case] be dismissed with prejudice under 109(g) for one year and for such other relief as the Court deems fair and equitable." *Id.* at pg. 2. At the Hearing held on the Trustee's Motion to Dismiss, the attorney for the Debtors, David Dworkin, related to the Court that this Chapter 13 case was filed with the aim of curing arrearages which had arisen on their 2011 Kia Soul and their land contract. According to attorney Dworkin, these arrearages arose when the Debtors recently encountered unforeseen financial difficulties.

---

[1] This obligation is the result of the Debtors having co-signed for automobile for their son. The Debtors' son presently pays the obligation.

Page 4

In re: Jorge and Linda Duran
Case No. 11-35966

At the conclusion of the Hearing, Debtors' attorney represented to the Court that the Debtors had, on the fourth or fifth of December, placed in the mail their first plan payment of $880.00. After hearing this representation, the Court related that, regarding the Trustee's Motion to Dismiss, it would wait and see what happened over the interim, but that if this case were to be dismissed, a two-year bar to refiling would be imposed against the Debtors.

On December 21, 2011, the Trustee filed a second motion to dismiss, entitled "Motion to Dismiss Case under 109(g) Without Further Notice or Hearing." (Doc. No. 32). The basis for the Motion: "the Debtors' payment in the amount of $880.00 made on December 16th, 2011 was returned NSF." On the same date, the Court granted the Trustee's Motion, entering an order providing that "the Debtors Jorge Duran and Linda Duran are hereby barred from filing a Bankruptcy Case under any chapter for a period of two years from the date of this Order."(Doc. No. 33). By way of the Motion now before this Court, to Reopen this case, the Debtors seek to have a previously filed Motion, asking the Court to Reconsider its Order Dismissing their Chapter 13 case, heard by the Court.

## DISCUSSION

In the matter now before the Court, the Debtors seek to have their bankruptcy case reopened for the purpose of having this Court adjudicate their Motion to Reconsider the Order dismissing their case and imposing a two-year bar to refiling. Consideration of this matter, as it directly concerns the administration of the estate is deemed to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Accordingly, this Court is conferred with jurisdiction to enter final orders in this matter. 28 U.S.C. § 157(b)(1).

Section 350(b) of the Bankruptcy Code governs requests to reopen a bankruptcy case and provides that, "[a] case maybe reopened in the court in which such case was closed to administer

Page 5

assets, to accord relief to the debtor, or for other cause." In this matter, the Debtors' basis for reopening their bankruptcy case is necessarily based on the second ground set forth in § 350(b): to accord them relief. In this regard, the Debtors seek to have their bankruptcy case reopened for the specific purpose of having this Court Reconsider its Order Dismissing the Debtors' case and imposing a two-year bar to refiling. Because it would be a futile exercise to reopen the Debtors' bankruptcy case, but then deny the Debtors' the actual relief sought, the Court will address the merits of the Debtors' Motion to Reconsider its Order of Dismissal.

Motions for Reconsideration are not expressly recognized by either the Federal Rules or the Bankruptcy Rules of Procedure. *Melton v. Melton (In re Melton)*, 238 B.R. 686, 692 (Bankr. N.D.Ohio 1999). Motions, however, so denominated are traditionally treated in one of two way: (1) as a Motion to Alter or Amend under Bankruptcy Rule 9023 if the motion is filed within 14 days of the rendition of the court's decision; or (2) if filed after 14 days, as a motion for Relief from Judgment under Bankruptcy Rule 9024. In this matter, given the timing of the events, the reconsideration of this Court's Order, dismissing the Debtors' case, will be treated as Motion to Alter or Amend under Bankruptcy Rule 9023.[2]

Subject to a couple of limited exceptions, not applicable in this matter, Bankruptcy Rule 9023 provides that "Rule 59 F.R. Civ. P. applies in cases under the Code." Motions to Alter or Amend are governed by Rule 59(e) of the Federal Rules. The decision whether to grant or deny a Rule 59(e)

---

[2] This Court's Order, dismissing the Debtors' case, was entered on December 21, 2011. (Doc. No. 33). The case was administratively closed on January 9, 2012. (Doc. No. 39). The Debtors filed their Motion for Reconsideration on January 9, 2012, a period of more than 14 days after the entry of the Court's order of Dismissal, but on the same date the case was formally closed. Given these different dates, the Court will give the Debtors the benefit of the doubt and use January 9, 2012, as the salient date since the standard to alter or amend a judgment under Bankruptcy Rule 9023 is less stringent than the standard necessary to provide relief from a judgment under Bankruptcy 9024. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173-74 (5th Cir.1990).

Page 6

In re: Jorge and Linda Duran
Case No. 11-35966

motion is entrusted to the sound judgment of the trial court. *In re Prince*, 85 F.3d 314, 324 (7th Cir.1996), *cert. denied*, 519 U.S. 1040, 117 S.Ct. 608, 136 L.Ed.2d 534.

The party moving to alter or amend a judgment under Rule 59 carries the burden to show that grounds for the motion exist. *Fifth Third Bank of W. Ohio v. United States*, 52 Fed.Cl. 637, 639 (2002). The burden has been described as a heavy one. *Fla. Power & Light Co. v. United States*, 66 Fed.Cl. 93, 96 (2005). For their burden, the Debtors argue that they be "allowed a second chance as their case was dismissed without notice or hearing due to a single arithmetic mistake." (Doc. No. 40).

Under Rule 59(e), no grounds are prescribed specifying the conditions upon which a court may alter or amend a judgment. Courts, however, have generally considered these four grounds when considering whether to alter or amend for purposes of Rule 59(e): (1) it is necessary to correct manifest errors of law or fact upon which the judgment is based; (2) newly discovered or previously unavailable evidence; (3) an intervening change in the controlling law; and (4) to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.1999). In this matter, the position posited by the Debtors can be construed as only raising the first and last of these grounds.

**Necessary to correct manifest errors of law or fact upon which the judgment is based**

For the first ground, a Rule 59(e) Motion to Alter or Amend brought on the basis of a manifest error of law or fact requires that the moving party show that matters or controlling decisions were overlooked that might have materially affected the earlier ruling. *Wechsler v. Hunt Health Sys. Ltd.*, 186 F.Supp.2d 402, 410 (S.D.N.Y.2002). Moreover, for the movant, it must be shown that the error was manifest, meaning that it is clear and obvious. *United States v. Battle*, 272 F.Supp.2d 1354,

Page 7

In re: Jorge and Linda Duran
Case No. 11-35966

1358 (N.D.Ga.2003). Nothing shows that such an error occurred regarding this Court's prior order.

This Court's prior Order, dismissing the Debtors' Chapter 13 bankruptcy case and imposing a two-year bar to refiling any further bankruptcy case, was predicated on the confluence of two circumstances: (1) Since 1995, the Debtors have filed nine bankruptcy cases; and (2) in this Chapter 13 case, the Debtors, in making their first payment under their proposed Chapter 13 plan, issued a check which was returned for insufficient funds. From both a factual and legal standpoint, these circumstances warranted dismissal.

Section 1307(c) provides that, upon a request of a party in interest, a court may dismiss a debtor's Chapter 13 case for "cause." For purposes of § 1307(c), "cause" is defined by a nonexclusive list of 11 factors. Included among the list: "failure to commence making timely payments under section 1326 of this title[.]" 11 U.S.C. § 1307(c)(4). A check written on an account with insufficient funds, as the Debtors did here, would necessarily disqualify the transfer as a payment, thus providing "cause" for dismissal on this basis alone.

In addressing the NSF check, the Debtors set forth that dismissal on this basis alone is not warranted because "they made a simple arithmetic mistake on their check register and in no way was the nsf check the result of intent or recklessness." (Doc. No. 40). Yet, even assuming this to be true, the dismissal of this case, with a two-year bar to refiling, is fully supported when circumstances are considered as a whole.

Dismissal for "cause" may also be founded upon factors not specifically listed in the statute, such as "prepetition bad-faith conduct." *Marrama v. Citizens Bank of Massachusetts (In re Marrama)*, 549 U.S. 365, 373, 127 S.Ct. 1105, 1111, 166 L.Ed.2d 956 (2007). Conduct of this nature may arise where, as this situation here, a debtor has sought bankruptcy relief on multiple occasions.

Page 8

In re: Jorge and Linda Duran
Case No. 11-35966

*Molitor v. Eidson (In re Molitor)*, 76 F.3d 218, 220-21 (8th Cir.1996). Similarly, "cause" for dismissal may exist where abuse of the process is indicated in the present case.

In this matter, all indicators are that the Debtors filed this case in bad faith and that such a filing constituted an abuse of the bankruptcy process. Over a period spanning just less than 17 years, the Debtors have, between them, filed nine bankruptcy cases – amounting to approximately one bankruptcy case filed every two years. It is, thus, fair to state that the Debtors' use of the bankruptcy process has become a habit and a part of their lifestyle. Such attributes were never intended to be a part of the bankruptcy process.

The Congress of the United States enacted the bankruptcy laws so as to afford a "fresh start" to the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). It was also envisioned that resorting to the bankruptcy laws of the United States would be a last resort. *In re Maddox*, 15 F.3d 1347, 1353 fn. 34 (5th Cir.1994). Habitual filers, such as the Debtors, thus, fall well outside the aims the Bankruptcy Code seeks to promote.

This is not to say that a repeat filer is automatically enjoined from obtaining relief under the Bankruptcy Code. Nothing in the Bankruptcy Code specifically limits an otherwise eligible debtor to a set number of bankruptcy filings. At the same time, given the aims the Bankruptcy Code seeks to promote, serial filers, such as the Debtors, are subject to a heightened level of scrutiny.

After closely looking at the Debtors' use of the bankruptcy process, both from a short term and long-term perspective, a pattern of abusive conduct arises. First, on a long-term basis, this troublesome pattern emerges. The Debtors, whether jointly or with just Mr. Duran, first file a Chapter 7 case which allows them to receive an immediate discharge. The entry of the Chapter 7

Page 9

In re: Jorge and Linda Duran
Case No. 11-35966

discharge, however, then triggers § 727(a)(8) which imposes a time limit before another discharge can be entered in a successive Chapter 7 case.[3]

Thereafter, during the time period in which the Debtors are not entitled to receive a Chapter 7 discharge, the Debtors file successive Chapter 13 cases, proposing a plan to repay their creditors. The filing of their Chapter 13 case then gives rise to the automatic stay of § 362(a), thereby protecting the Debtors from their creditors. Once the Chapter 13 case is commenced, the Debtors then, for varying durations, make payments under their plan, only to have each of their Chapter 13 cases ultimately dismissed. At the same time, when the time limit imposed by § 727(a)(8) expired, and they again became eligible for an immediate discharge under Chapter 7, the Debtors quickly sought such relief.

This pattern of filing a Chapter 7 case, followed by successive Chapter 13 cases, followed then by another Chapter 7 case, is now in its third cycle. Given this pattern, if this case were reinstated, and the two-year bar to refiling set aside, there is no reason to suppose that the Debtors' course of abusive conduct would not continue unabated. The Debtors' conduct over the short term further reinforces this conclusion.

On October 20, 2010, the Debtors filed their third petition for Chapter 7 relief in this Court. On February 17, 2011, an order of discharge was entered in this case, affording the Debtors a discharge of $38,700.64 in unsecured, nonpriority debt. On November 3, 2011, just over eight

---

[3] Between the time the Debtors filed their first and second Chapter 7 cases, this time limit was six years, thus shedding light on the approximately seven-year interval between these two cases. Between the time the Debtors filed their second and third Chapter 7 cases, this time limit was eight years, thus helping to explain the less than nine-year interval between these two cases.

Page 10

In re: Jorge and Linda Duran
Case No. 11-35966

months after receiving their discharge, the Debtors again sought relief in this Court, this time under Chapter 13 of the Code.

In the time between these two bankruptcy cases, a period of slightly more than one year, the Debtors incurred an additional $19,817.64 in nonpriority, unsecured claims. Yet, despite incurring these new obligations just after receiving their third fresh start, the Debtors placed a plan before the Court proposing to pay their new creditors just 1% of their allowed claims. Proposing such a *de minimis* amount is a clear affront to such creditors, particularly considering that the Debtors have at their disposable financial resources which could undoubtably pay a greater amount. In this regard, it was represented to the Court that the Debtors now receive a monthly income of $3,405.77, or almost $41,000.00 per year, an amount which is soon to increase by $532.00 per month when Mrs. Duran begins to receive social security payments. In fact, based upon this income, the Debtors represented at the Hearing held to Reopen their case that they could potentially manage a 100% plan, thereby begging the question: Why didn't the Debtors initially propose to pay such an amount?

To be sure, the Debtors' second amended plan proposed to pay 35% to unsecured creditors. However, this does not change the direction of this case, as the Debtors only made this amendment after the Hearing was held on the Trustee's Motion to Dismiss at which time the Debtors heard the Court's initial disapproval of such a plan. Even this aside, history shows that reinstating the Debtors' bankruptcy case is not likely to bear fruit.

Prior to this case, the Debtors have sought Chapter 13 bankruptcy relief on five separate occasions, but have never completed a plan. This, alone, raises serious doubts as to the feasibility of any plan now proposed by the Debtors. However, when combined with the Debtors' failure to have sufficient funds in their account to have their first payment to the Trustee honored, the likelihood of success in this case becomes just too speculative. The Debtors' explanation, that the NSF check was the result of an accounting error, does nothing to mitigate this circumstance.

Page 11

In re: Jorge and Linda Duran
Case No. 11-35966

The Debtors have now been before the Court on nine separate occasions. The Debtors, thus, cannot be considered inexperienced as to their duty to comply with the procedural requirements of bankruptcy law. Furthermore, if, as the Debtors explained, this Chapter 13 case is absolutely necessary for them to maintain their land contract, and stay in their home, it would only make sense that the Debtors would have taken the required steps to ensure that their first payment to the Trustee would have been honored.

Other considerations further show that the Debtors' use of the bankruptcy process has been an abuse. First, the simple fact that the Debtors, after receiving repeated Chapter 7 discharges, continue to incur further consumer debt beyond their means to pay, shows a cavalier attitude toward their finances. As stated above, the Debtors, after receiving their last Chapter 7 discharge, incurred almost $20,000.00 in consumer debt in a little over a year. In this regard, it would seem to the Court that any reasonable person, having repeatedly gone through the bankruptcy process, would strive to get their financial affairs in order. In this case, however, the Debtors did just the opposite.

For example, not only did the Debtors incur significant unsecured debt after their last Chapter 7 filing, but the Debtors also purchased two automobiles – including a new 2011 vehicle – incurring in the process more than $30,000.00 in secured debt. Also tending to indicate an abuse of the bankruptcy process is the fact that the Debtors, in their last bankruptcy filing, sought to retain a "2001 Harley Fat Boy Motorcycle," a likely luxury item. Given, therefore, all these considerations, the Court cannot construe that any error was made when it previously dismissed the Debtors' case and imposed a two-year bar to refiling.

Page 12

In re: Jorge and Linda Duran
Case No. 11-35966

### Prevent manifest injustice

The Debtors' position, in support of reinstating their case, can also be construed as implicating the fourth ground warranting altering or amending a judgment under Bankruptcy Rule 9023: It is necessary to prevent a manifest injustice. In their words:

> Debtors' case was dismissed without notice and without hearing before confirmation and the confirmation Order's standard drop dead language. Further, the Trustee did not give a courtesy notice with an opportunity to cure. Debtors believe they are not being given the same treatment afforded other Chapter 13 debtors.

(Doc. No. 40). The Court, however, must again reject the Debtors' position.

Unlike the normal progression of a Chapter 13 case, the Debtors' case became, near its onset, the subject of the Trustee's Motion to Dismiss. Then, at the Hearing, held on the Trustee's Motion to dismiss, the Court specifically warned the Debtors that if their case were to be dismissed, it would be subject to a two-year bar to refiling. Thus, the Debtors were on notice that if they failed to comply with the duties imposed by the Bankruptcy Code, their case was subject to dismissal with a two-year bar to refiling. As a result, and particularly considering their years of experience with this Court, it is a stretch to conclude that the Debtors were without knowledge of the implications which could result if they issued an NSF check.

Yet, even assuming the Debtors' position to be true, so that the Debtors' should have been given a chance to be heard on the matter of their NSF check prior to the dismissal of their case, is not cause to set aside this Court's prior order dismissing their case. This is because the position has been rendered moot by the fact that the merits of the Debtors' position were heard by the Court at the Hearing held on their Motion to reopen their case. In this regard, had the Debtors' justification

Page 13

In re: Jorge and Linda Duran
Case No. 11-35966

for the NSF check been found to have merit, the Court would have reopened their case to set aside the Order of Dismissal.

In conclusion, the Court cannot find that this Court's prior Order, dismissing the Debtors' Chapter 13 case and imposing a two-year bar to refiling should be altered or amended pursuant to Bankruptcy Rule 9023. This decision is not taken likely. It is realized that by denying the Debtors' Motion to Reopen their bankruptcy case, the Court is effectively denying the Debtors access to the protections of the Bankruptcy Code for a period of two years. However, for all the reasons set forth herein, and for those reasons stated at the Hearing held on the Debtors' Motion to Reopen, it is the judgment of the Court that such a remedy is equitable.

Accordingly, for all these reasons, it is

**ORDERED** that the Motion of the Debtors, Jorge and Linda Duran, to reopen their case, be, and is hereby, DENIED.

**IT IS FURTHER ORDERED** that this Court's Order of Dismissal, dated December 21, 2011 (Doc. No. 33), and imposing a two-year bar to refiling, shall remain in effect.

Dated: January 27, 2012

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 14

# CERTIFICATE OF SERVICE

Copies were mailed this 27th day of January, 2012 to:

Jorge A. Duran
5210 Brophy Drive
Toledo, OH 43611

Linda J. Duran
5210 Brophy Drive
Toledo, OH 43611

David M Dworkin
3360 W Laskey Rd
Toledo, OH 43623

John P. Gustafson
316 N. Michigan St, #501
Toledo, OH 43604

Elizabeth A Vaughan
316 N. Michigan St, #501
Toledo, OH 43604

Capital One Auto Finance Department
C/O Ascension Capital Group
P.O. Box 201347
Arlington, Tx 76006

_____
Deputy Clerk, U.S. Bankruptcy Court